[No. C067148. Third Dist. Aug. 22, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
VANDELL JOHNSON, JR., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I, II, and IV of the Discussion.

COUNSEL

Stephen Gilbert, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, David A. Rhodes and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

RAYE, P. J.—Defendant Vandell Johnson, Jr., and codefendant Rammel Barao were jointly charged with having murdered Juan Carlos Lorenzo in the course of robbing him (count 1) and with the robbery of Lorenzo (count 2) and Lorenzo's companion, Domingo Moyotl (count 3). Each count alleged that Barao personally used a firearm and that defendant was armed with a firearm. It was further alleged that defendant had three prior strike convictions, all of which were incurred in juvenile court, and that defendant had committed the instant offenses while being on bail for another offense.

In a joint trial by jury, defendant was acquitted of the murder and all lesser included offenses, but was found guilty of the two robberies; the armed enhancements were found not true. In a court trial, the court found the on-bail allegation true and purportedly found the three prior strike conviction allegations true.

Barao was acquitted of first degree murder and the two robbery counts, but was found guilty of second degree murder with personal use of a firearm.[1]

Defendant was sentenced to 50 years to life in state prison for the robberies, and the on-bail enhancement was ordered to run concurrently with those terms.

On appeal, defendant contends (1) the evidence was insufficient to support his conviction of the robbery charged in count 2 (Lorenzo); (2) the strike priors must be stricken because he neither waived his right to a jury determination of their truth, nor did the trial judge find they were true; (3) the on-bail enhancement finding must be reversed because he neither waived his right to a jury determination of its truth, nor was the evidence sufficient to support the true finding; and (4) the prior strike findings must be stricken because he was not afforded a jury trial on their truth. We shall affirm defendant's convictions but remand for resentencing.

## FACTS

*People's Case*

During the evening of February 28, 2009, defendant and Barao, accompanied by their girlfriends Chansarinna Uy and Desiree Ballestrasse,[2] walked from Barao's apartment on East Park Street to Bobadilla's Billiards to play pool. Also present at Bobadilla's were Lorenzo and Moyotl. Although Moyotl understood only a little English, the two groups struck up a conversation. Eventually the four men went into the parking lot and began discussing drugs. Moyotl heard someone say "cocaine," but he did not understand much more of the conversation.

After speaking for a short time, the four men got into Lorenzo's car— Moyotl in the driver's seat, Lorenzo in the passenger seat, and defendant and codefendant Barao in the backseat. Defendant and Barao tried to give Moyotl directions, but Moyotl had difficulty understanding so Lorenzo took over the driving. Defendant or Barao directed Lorenzo to a parking lot.

According to Moyotl, defendant got out of the car and walked toward the street, but then returned and stood by the driver's door. Moyotl saw Barao get

---

[1] Barao was also found guilty of possession of a firearm by a convicted felon (count 4) and possession of ammunition by a convicted felon (count 5).

[2] At the time of trial, Ballestrasse had married Barao.

out of the car, take a gun from his waistband and put it up his sleeve. As Barao and defendant were speaking with Lorenzo, Moyotl said to Lorenzo, "Let's go, let's go now." However, Lorenzo continued talking and then Barao shot Lorenzo in the head. Lorenzo's car rolled about 25 feet, hit a fence, and stopped.

Barao immediately walked away from the area, but defendant went to the passenger side of the car and demanded money from Moyotl. Moyotl gave defendant his wallet, and defendant gestured for Moyotl to get out of the car and leave. Moyotl walked away but looked back and saw defendant get into the front passenger seat of Lorenzo's car. As Moyotl walked he called the police, who met him at a Laundromat about two blocks away.

Police officers who responded to the Laundromat spoke with Moyotl, with whom they had difficulty communicating. Eventually, the officers learned of the shooting and found Lorenzo's car in the parking lot with Lorenzo still in it. Lorenzo's car stereo, which had been in the dashboard prior to the shooting, was missing and the connecting wires were hanging from the center console. Lorenzo was still alive and was transported to a hospital; however, a few days later he died. The cause of death was a single gunshot wound to the head.

*Defense Case*

Defendant testified, confirming meeting Lorenzo and Moyotl at the pool hall. Defendant claimed it was Lorenzo who was selling drugs and that he, who also sold drugs, intended to buy drugs from Lorenzo. Lorenzo set up the buy and drove them to the parking lot where the drugs were to be delivered.

Fearing that he and Barao were being set up, defendant got out of Lorenzo's car and walked away. However, defendant heard Lorenzo speaking loudly to Barao, so he walked back to the car. While defendant and Barao were talking with Lorenzo, Barao suddenly pulled out a gun, which defendant did not know that Barao possessed. Lorenzo reached out of the driver's window for the gun, defendant heard the car's engine rev, and Barao then shot Lorenzo. Defendant fled because he was scared.

Defendant denied robbing or intending to rob either Lorenzo or Moyotl. When defendant later asked Barao what happened, the latter said that "the guy tried to run him over and then a shot went off."

Both Uy and Ballestrasse were outside the East Park Street apartment when defendant returned, walking. Defendant was not carrying anything.

## DISCUSSION*

### I, II

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III

Pursuant to Penal Code section 12022.1 (references to undesignated sections are to the Penal Code),[6] defendant was charged with being on felony bail when he committed the offenses charged in the present case. At the hearing on the enhancement, defendant stipulated that when he committed the present offenses (secondary case), he was on felony bail in another case (primary case). Based upon the stipulation and supporting documents (People's exhibit No. 86), the court found the enhancement true and, at sentencing, imposed the mandatory two-year term to run concurrently with the two robbery sentences.

Defendant now contends the section 12022.1 enhancement must be struck because (1) the evidence is insufficient to support the true finding since there was no proof that he had been convicted of the primary offense and (2) he did not waive his right to a jury trial on the enhancement. The People respond that defendant is not entitled to a jury trial on the enhancement, but agree with defendant's insufficiency of the evidence argument.

We disagree with the parties that there was insufficient evidence to support the enhancement. However, we shall strike the two-year term because it was imposed concurrently rather than consecutively as expressly required by section 12022.1, subdivision (b).[7] We further conclude that defendant is not entitled to a jury trial on the truth of the enhancement under either the federal or California Constitution.

---

`*See footnote, ante, page 1092.

[6] Former section 12022.1 provided, in pertinent part: "(a) For the purposes of this section only: [¶] (1) 'Primary offense' means a felony offense for which a person has been released from custody on bail or on his or her own recognizance . . . . [¶] (2) 'Secondary offense' means a felony offense alleged to have been committed while the person is released from custody for a primary offense. [¶] (b) Any person arrested for a secondary offense which was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty enhancement of an additional two years in state prison which shall be served consecutive to any other term imposed by the court. [¶] (c) The enhancement allegation provided in subdivision (b) shall be pleaded in the information or indictment which alleges the secondary offense . . . ."

[7] We strike the punishment because the court, having imposed a concurrent term, may wish to exercise its discretion to strike the term pursuant to section 1385 rather than have it run consecutively, as we explain further in this part.

## The Evidence Is Not Insufficient to Support the Enhancement

■ Defendant and the People argue the section 12022.1 enhancement must be struck because there was no proof that defendant was convicted of the primary offense. However, conviction of the primary offense is not an element of a section 12022.1 enhancement. As explained in *People v. Smith* (2006) 142 Cal.App.4th 923 [48 Cal.Rptr.3d 378], "Section 12022.1 does not make the defendant's conviction of the primary offense an element of the enhancement for the purpose of proving the enhancement. Instead, the statute only requires proof of conviction of the primary offense before the enhancement can be imposed. [Citations.] . . . [¶] . . . 'Whenever there is a conviction for the secondary offense and the enhancement is proved, and the person is sentenced on the secondary offense prior to the conviction of the primary offense, the imposition of the enhancement shall be stayed pending imposition of the sentence for the primary offense.' " (*Smith*, at p. 935; see § 12022.1, subd. (d).)

Because defendant's and the People's sole basis for challenging the sufficiency of the evidence to support the section 12022.1 enhancement is lack of proof of the primary offense, and because proof of the primary offense is irrelevant to a finding of the truth of the enhancement, the contention is rejected. However, this does not end the matter.

"[W]hen, as here, the secondary felony offense is adjudicated first and an on-bail enhancement is proved, the secondary-offense court may . . . (1) . . . stay 'imposition of the enhancement.' If the court follows that course, the enhancement is not imposed as a part of the defendant's sentence but is preserved until after the primary-offense court has rendered judgment on a felony conviction in that court, at which time the secondary-offense court . . . may either impose the enhancement or strike it pursuant to section 1385. (2) Alternatively, . . . [i]f the [secondary-offense] court determines to *impose* the enhancement, it may do so, but it also must stay execution of that aspect of the sentence, pending resolution of the prosecution of the primary offense. If the court imposes the enhancement and stays its execution, that aspect of the imposed sentence becomes effective immediately upon the primary-offense court's order lifting the stay after the defendant has been convicted of the primary felony offense." (*People v. Meloney* (2003) 30 Cal.4th 1145, 1149 [135 Cal.Rptr.2d 602, 70 P.3d 1023] (*Meloney*).)

Since, contrary to section 12022.1, the trial court imposed a concurrent two-year term for the enhancement, we shall strike the punishment and afford the trial court on remand the opportunity to exercise its discretion to strike the enhancement if it so chooses.

## Right to Jury Trial on Section 12022.1 Enhancement[8]

■ In *Apprendi, supra,* 530 U.S. 466, the court stated: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490.)

The California Supreme Court has "rejected a narrow or literal application of the [United States Supreme Court's] reference to 'the fact of a prior conviction.' " (*People v. Towne* (2008) 44 Cal.4th 63, 79 [78 Cal.Rptr.3d 530, 186 P.3d 10] (*Towne*).) In *Towne,* the court held that the aggravating circumstances that a defendant "served a prior prison term" (Cal. Rules of Court, rule 4.421(b)(3); further references to rules are to the California Rules of Court), "was on probation or parole when the crime was committed" (rule 4.421(b)(4)), or whose "prior performance on probation or parole was unsatisfactory" (rule 4.421(b)(5)) may be determined by a judge rather than a jury. (*Towne,* at pp. 70–71.)[9] In *People v. McGee* (2006) 38 Cal.4th 682 [42 Cal.Rptr.3d 899, 133 P.3d 1054] (*McGee*), the court held that, consistent with *Apprendi,* a trial court may determine whether a prior conviction qualified as a conviction of a serious felony. (*McGee,* at p. 706.) In *People v. Black* (2007) 41 Cal.4th 799 [62 Cal.Rptr.3d 569, 161 P.3d 1130] (*Black*), the court held that the trial court, not the jury, decides whether a defendant's prior convictions are numerous and of increasing seriousness (rule 4.421(b)(2)). (*Black,* at pp. 818–820.)[10]

Similarly, the appellate court in *People v. Thomas* (2001) 91 Cal.App.4th 212 [110 Cal.Rptr.2d 571] (*Thomas*) held that the court, not a jury, determines whether a defendant has served a prior prison term within the meaning of section 667.5, subdivision (b). (*Thomas,* at pp. 220–223.) *Thomas* was cited with approval in *Black, supra,* 41 Cal.4th at page 819; *Towne, supra,* 44 Cal.4th at pages 79–80; and *McGee, supra,* 38 Cal.4th at pages 700–702.

The bases for the above holdings were, in general, that the aggravating factors were all related to "the fact of a prior conviction" by their recidivistic nature, rather than to the conduct involved in the charged offense(s), and that such factors could be proven by reliable documentation, such as court

---

[8] The People's brief is of little aid on this issue because it relies on cases prior to *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*).

[9] As to the latter factor, the court limited its holding to determinations made only "based upon the defendant's record of one or more prior convictions." (*Towne, supra,* 44 Cal.4th at pp. 70–71.)

[10] The California Rules of Court " 'have the force of statute to the extent that they are not inconsistent with legislative enactments and constitutional provisions.' [Citation.]" (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1011 [32 Cal.Rptr.3d 89, 116 P.3d 550].)

records. (See *Towne, supra,* 44 Cal.4th at pp. 75–80; *McGee, supra,* 38 Cal.4th at pp. 708–709; *Black, supra,* 41 Cal.4th at pp. 818–820; *Thomas, supra,* 91 Cal.App.4th at pp. 222–223.)

 Section 12022.1 is a recidivist statute—it enhances punishment based upon the defendant's commission of another offense while on bail for a previous offense. (*People v. Walker* (2002) 29 Cal.4th 577, 589 [128 Cal.Rptr.2d 75, 59 P.3d 150] ["a section 12022.1 enhancement turns on the status of a defendant as a repeat offender, not on what the defendant did when committing the current crime, i.e., secondary offense"].)

The only difference between a defendant who commits a felony offense while on probation or parole and a defendant who commits a felony offense while on bail for another felony offense is the timing. In the former circumstance, the prior conviction (primary offense) has already occurred. The distinction is insignificant because in the latter circumstance the defendant cannot be punished until he is convicted of the primary offense. Of course, in both circumstances, additional punishment requires a conviction of the second charged offense.

 Because section 12022.1 is an enhancement statute that, like the foregoing examples, penalizes recidivist conduct and does not relate to the commission of either the primary or secondary offense, defendant is not entitled to a jury trial on its truth.[11]

## IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

Defendant's robbery convictions are affirmed. The true finding regarding the three prior strike conviction allegations is reversed and the sentences for the robberies are reversed. The two-year concurrent sentence imposed pursuant to section 12022.1 is vacated and the court is directed to resentence defendant in accordance with the procedure set forth in *Meloney, supra,* 30

---

[11] To the extent defendant's argument may be considered a claim that a jury right is statutory (§ 1170.1, subd. (e) ["All enhancements shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact."]), his failure to object on that ground forfeits the issue for appeal (*People v. French* (2008) 43 Cal.4th 36, 46 [73 Cal.Rptr.3d 605, 178 P.3d 1100] ["The requirement of an express waiver applies to the constitutional right to a jury trial, but not to jury trial rights that are established only by statute."]).

*See footnote, *ante,* page 1092.

Cal.4th at page 1165. The matter is remanded to San Joaquin County Superior Court for trial on the strike conviction allegations, if requested by the People, and for resentencing on the robbery convictions. In all other respects the judgment is affirmed.

Robie, J., and Mauro, J., concurred.

A petition for a rehearing was denied September 5, 2012, and appellant's petition for review by the Supreme Court was denied November 14, 2012, S205341.