Filed 8/13/14  P. v. Gonzalez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C073363 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F03087) |
| v. | |
| JUAN ANTHONY GONZALEZ, | |
| Defendant and Appellant. | |

In November 2012, defendant Juan Anthony Gonzalez pleaded no contest to conspiracy to transport methamphetamine (Pen. Code, § 182, subd. (a)(1);[1] Health & Saf. Code, § 11379, subd. (b)) and kidnapping (§ 207, subd. (a)).  He admitted allegations that he personally used a shotgun in the commission of the kidnapping (§ 12022.53, subd. (b)), that he committed the kidnapping for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), and that he had suffered a November 1998 robbery strike conviction

---

[1]     Undesignated statutory references are to the Penal Code.

1

(§§ 667, subds. (b)-(i), 1170.12). The parties agreed to a prison sentence lid of 26 years and agreed that defendant could ask the court to dismiss the strike allegation at sentencing. (§ 1385; *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).)

In March 2013, the trial court considered and denied defendant's *Romero* invitation. The prosecution moved to dismiss the conspiracy count pursuant to the sentence lid. Defendant was sentenced to prison for 26 years, consisting of twice the low term of three years for kidnapping, 10 years for firearm use, and 10 years for benefiting his gang.

On appeal, defendant contends the denial of his *Romero* invitation was an abuse of discretion because the trial court did not give individualized consideration to his personal background and the facts of the crime. We affirm.

## FACTS[2]

On April 28, 2010, police officers from various agencies responded to a reported kidnapping at defendant's Sacramento address. They conducted a parole search and recovered a sawed-off shotgun. Officers then learned that defendant and alleged victim H.M. were at a residence in Rio Linda. Officers proceeded to that residence and intercepted a departing car. A loaded shotgun, a bloody shirt with duct tape, nylon rope, and two pillowcases were found in the car. Officers later located defendant and H.M. walking at a location in Rio Linda. H.M. had a large gash on his head. H.M. later told officers that, while held at defendant's residence, he was struck in the head and kicked several times. H.M. was forced to change clothes and was driven to a tow yard where he and defendant remained for several hours. They later left the tow yard and were

---

[2] Because the matter was resolved by plea, our statement of facts is taken from the probation officer's report and the prosecutor's statement of factual basis for the plea. The statement is limited to the kidnapping count.

contacted by law enforcement. The crime was committed at the direction of, and for the benefit of, the Nuestra Familia street gang.

## DISCUSSION

Defendant contends the denial of his *Romero* invitation was an abuse of discretion because the trial court did not give individualized consideration to his personal background and the facts of the crime. He argues the court's cursory reference to his "background" and its assertion that there were not "any" mitigating factors could not have reflected an individualized consideration of the "extremely challenging family history" described in defendant's *Romero* invitation. We disagree.

### *Background*

In February 2013, defendant filed a written *Romero* invitation to dismiss the strike allegation. After incorporating by reference the probation report, the invitation emphasized that defendant's mother was a "serious life-long drug addict" and his father was "a drug addict" who was sentenced to prison when defendant was eight years old. Defendant's mother, father, and stepfather have extensive criminal records. His "mother and father neglected the family" to such an extent that defendant "was expected to care for his siblings" until all the "children were placed in the Foster Care system." Defendant remained in foster care until he was nearly 17 years old. He began his substance abuse and gang association while in foster care.

The *Romero* invitation noted defendant married in 2002 and fathered five children. His family obligations caused "financial pressures" that "continued to return him to his felonious ways." The lack of money was "always a point of unrest and contention in the family." Defendant separated from his wife in late 2010 and the marriage was dissolved. The loss of his family and the pressures of trying to reunite with them "were too great," and defendant "succumbed to the present criminal conduct."

Regarding the prior robbery, the *Romero* invitation again requested the court to accept the probation report. That report noted that in September 1998, defendant and two

3

others, all armed with handguns, robbed a 53-year-old man. The victim was repeatedly punched in the face, had a gun held to his head several times, was handcuffed, and evidently was blindfolded by a shirt placed over his head and secured with duct tape. When the robbers were unable to open the victim's safe they carried him to the bedroom, removed the blindfold and handcuffs, and forced him to open the safe. The victim told officers that defendant held a gun to his head and threatened to shoot him if he did not open the safe.

But after referencing this report, defendant's *Romero* invitation "emphasize[d]" that "both he and his co-defendant actually only had one gun." While literally true, in that each of the three perpetrators had "only" "one gun," the passage was perceptively construed by the trial court as a false "indicat[ion]" that defendant "was not armed." The court noted that defendant was with "two other individuals," not one, that "all were armed with handguns," and that defendant "held a gun to [the victim's] head and threatened to shoot him."

Defendant's *Romero* invitation falsely portrayed his present conviction of kidnapping with personal firearm use as a "present non-violent conviction" and argued that 2012's Proposition 36 demonstrated the voters' intent that he should not have his sentence doubled "because of his 10[-]year prior serious felony conviction." The prosecutor countered that the kidnapping was a violent felony and that defendant's analogy to Proposition 36 failed. (See § 667.5, subd. (c)(22) [defining "[a]ny violation of Section 12022.53" as a " 'violent felony' "].)

Defendant's *Romero* invitation noted he has cooperated with law enforcement and that various codefendants in this case had received sentences ranging from probation to a maximum of 12 years. In his view, a sentence more than twice as lengthy as that meted out to any other defendant would be excessive.

In denying the *Romero* invitation, the trial court determined the 1998 robbery was not remote because defendant received a 12-year prison term, he was convicted of assault

4

while in prison, paroled in 2003, violated parole and returned to prison in 2010, and was on parole at the time of the present offense. The court noted the present offense was a serious and violent felony involving a weapon and that there were "many aggravating factors."

The trial court found several aggravating factors under rule 4.421 of the California Rules of Court[3] applied. "The crime involve[d] great violence, great harm, threat of great bodily harm, and therefore acts disposing [*sic*] a high degree of cruelty, viciousness and callousness. [¶] Number 2 applies; that he was armed with a weapon at the time. Sub 3 is, I would argue does apply; that the victim was vulnerable in the sense that he was kidnapped and restrained. [¶] 8(a) applies; the manner in which the crime was carried out indicates planning. [¶] (b)(1) applies; factors relating to the defendant that he's engaged in violent conduct that indicates he's a danger to society. [¶] ([b])(2) also applies; that he has convictions of increasing seriousness. [¶] (b)(3) applies; that he's served a prior prison term. [¶] (4) applies. He was on parole when the crime was committed. [¶] And (5) applies, that his performance on parole has not been satisfactory."

The trial court then stated: "In looking at circumstances in mitigation under [rule] 4.423, I don't find that any of them apply to" defendant.

The trial court continued: "Then as far as his background, his character and prospects, I have considered what [defense counsel] has argued on your behalf, [defendant]. But after considering all the factors, I don't find that the defendant is outside the spirit of the three strikes law. [¶] Therefore, I would decline to strike the prior conviction that's been alleged and admitted by [defendant]."

---

**3** Further references to "Rules" are to the California Rules of Court.

*Analysis*

In the furtherance of justice, a trial court may strike or dismiss a prior conviction allegation. (§ 1385; *Romero, supra*, 13 Cal.4th at p. 504; *People v. Meloney* (2003) 30 Cal.4th 1145, 1155.) A trial court's refusal to strike a prior conviction allegation is reviewed under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).) Under that standard, the party seeking reversal must " 'clearly show that the sentencing decision was irrational or arbitrary.' " (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.) It is not enough to show that reasonable people might disagree about whether to strike a prior conviction. (*Carmony*, *supra,* at p. 378.) Only extraordinary circumstances justify a finding that a career criminal is outside the "Three Strikes" law. (*Ibid*.) Therefore, "the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Ibid*.)

When considering whether to strike prior convictions, the relevant factors a court must consider are "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) The Three Strikes law "not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm . . . . [T]he law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Carmony, supra,* 33 Cal.4th at p. 378; *In re Large* (2007) 41 Cal.4th 538, 550-551.) We presume the trial court considered all the relevant factors in the absence of an affirmative record to the contrary. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

6

In this case, the trial court said, "The Court is required to consider all the relevant factors. It would be improper for the Court to focus on any single factor such as the nature of the current conviction to the exclusion of all others." The court later told defendant, "I have considered what [defense counsel] has argued on your behalf, [defendant]." Defense counsel's argument included the written *Romero* invitation as well as some oral remarks at the hearing. In the absence of an affirmative record to the contrary, we presume the court did as stated and thus considered the entirety of the written invitation as well as the oral remarks. (*People v. Myers, supra,* 69 Cal.App.4th at p. 310.)

Defendant counters that, even without an affirmative record to the contrary, a fatal lack of individualized consideration can be inferred from the trial court's failure to find any mitigating circumstances. This argument overlooks our standard of review and discounts any possibility that the trial court considered and rejected the claimed mitigation on its merits.

The record more than adequately supports rejection of mitigating factors. The probation report and the *Romero* invitation noted defendant was exposed to a traumatic environment as a youth and was depressed and drug addicted as an adult. But the invitation eschewed any argument defendant's background excused his conduct for any reason. More particularly, the invitation made no claim that his background "significantly reduced" his culpability within the meaning of rule 4.423(b)(2). Defendant fails to demonstrate "no reasonable people could disagree" his mental condition was a decisive mitigating factor that required his 1998 robbery conviction stricken. (*Carmony, supra,* 33 Cal.4th at p. 378.)

Defendant pleaded no contest in November 2012, more than two years after he appeared in custody in June 2010. The appellate record does not include most of the trial court proceedings during that time. Defendant fails to explain how his plea two years

into the proceedings acknowledged wrongdoing "at an early stage of the criminal process" within the meaning of rule 4.423(b)(3).

The *Romero* invitation suggests that defendant repeatedly cooperated with various law enforcement entities that were involved in this multi-defendant case. But the invitation does not show any such cooperation included defendant's voluntary acknowledgment of wrongdoing on the kidnapping offense. (Rule 4.423(b)(3).) The record as a whole supports an inference that most of the law enforcement activity -- and thus defendant's cooperation with law enforcement -- was targeted at the dismissed conspiracy count.

In the *Romero* invitation, defendant acknowledged he "failed '[s]ociety' " by his "weak and poor decisions." But these acknowledgments were not made prior to the arrest or at an early stage of the criminal process. Defendant's argument they come within rule 4.423(b)(3) has no merit.

The *Romero* invitation asserted defendant *previously* engaged in criminal activity to support his family. It asserted the lack of money was "always a point of unrest and contention in the family." As a result, it said defendant separated from his wife and their marriage dissolved. It suggested he believed the loss of his family and the pressures of trying to reunite with them were "too great" and as a result he "succumbed to the present criminal conduct."

On appeal, defendant claims the *Romero* invitation "asserted that [he] had engaged in criminal activity to support his family" and that "this factor spoke to mitigation under" rule 4.423(a)(8), which applies where "[t]he defendant was motivated by a desire to provide necessities for his or her family or self." But the invitation identified family support as a motivation for defendant's *previous* criminality, not the present offense. Defendant's plea admitted the present kidnapping was committed not to support his family but to benefit a criminal street gang. The trial court's failure to find mitigation under rule 4.423(a)(8) was not error or an abuse of discretion.

8

In sum, defendant has not shown the extraordinary circumstances "where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme." (*Carmony, supra,* 33 Cal.4th at p. 378.) The trial court's denial of his *Romero* invitation was not an abuse of discretion.

DISPOSITION

The judgment is affirmed.


      NICHOLSON    , J.


We concur:


      BLEASE     , Acting P. J.


      DUARTE    , J.